**MULCAHY LLP**
James M. Mulcahy (SBN 213547)
*jmulcahy@mulcahyllp.com*
Kevin A. Adams (SBN 239171)
*kadams@mulcahyllp.com*
Douglas R. Luther (SBN 280550)
*dluther@mulcahyllp.com*
Four Park Plaza, Suite 1230
Irvine, California 92614
Telephone: (949) 252-9377
Facsimile: (949) 252-0090

*Attorneys for Plaintiffs/Counter-Defendants Bennion & Deville Fine Homes, Inc., Bennion & Deville Fine Homes SoCal, Inc., Windermere Services Southern California, Inc., and Counter-Defendants Robert L. Bennion and Joseph R. Deville*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNION & DEVILLE FINE HOMES, INC., a California corporation, BENNION & DEVILLE FINE HOMES SOCAL, INC., a California corporation, WINDERMERE SERVICES SOUTHERN CALIFORNIA, INC., a California corporation, | Case No. 5:15-cv-01921-R-KK<br>*Hon. Manual L. Real*<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES [L.R. 37-2.3]** |
| Plaintiffs, | Date: June 6, 2016<br>Time: 10:00 a.m. |
| v. | Place: Courtroom No. 8 |
| WINDERMERE REAL ESTATE SERVICES COMPANY, a Washington corporation; and DOES 1-10. | Discovery Cutoff: August 29, 2016<br>Pretrial Conference: September 19, 2016<br>Trial: October 18, 2016 |
| Defendants. | Complaint filed: September 17, 2015<br>First Amended Complaint filed: |
| AND RELATED COUNTERCLAIMS | October 14, 2015 |

Pursuant to Local Rule ("L.R.") 37-2.3, Plaintiffs Bennion & Deville Fine Homes, Inc. ("B&D Fine Homes"), Bennion & Deville Fine Homes SoCal, Inc. ("B&D SoCal"), and Windermere Services Southern California, Inc. ("Services SoCal") (collectively, "Plaintiffs"), hereby submit the following Supplemental Memorandum in support of Plaintiffs' Motion to Compel Further Responses to Document Production Requests and the Production of Documents from Defendant/Counterclaimant Windermere Real Estate Services Company ("WSC").

## I.   PLAINTIFFS' REQUESTED RELIEF SHOULD STILL BE GRANTED

WSC's discovery responses and document production should have been timely produced in the case on January 20, 2016. (Adams Decl., ¶4.[1]) Despite nearly four months of delay, WSC continued to drag its feet and refused to provide a date in which its production and supplemental responses would be complete. This left Plaintiffs with no choice but to pursue the instant motion to compel.

Incredibly, mere days after Plaintiffs notified WSC of their intended motion, WSC produced more than 41,000 pages of documents – dwarfing the 14,002 total pages it had produced between January and April 2016. (Feasby Decl., ¶ 12.) Nonetheless, WSC's production and written responses were still lacking and the Joint Stipulation re: Plaintiffs' Motion to Compel was filed with the Court on May 6, 2016. [D.E. 42.] After the motion was filed, on May 9, 2016, Plaintiffs received WSC's supplemental written responses and several thousand additional pages of responsive documents.

WSC's immediate supplementation of its written responses and substantial production of documents validates Plaintiffs' preparation and pursuit of the instant motion to compel. Now, Plaintiffs are tasked with reviewing, in short order, the supplemental responses and nearly 45,000 pages of documents to ensure the completeness of WSC's responses. These are not tasks that Plaintiffs have been able to

---

[1] All truncated citations are consistent with the citations used in the parties' Joint Stipulation. *See* D.E. 42.

complete in advance of the May 23, 2016 Supplemental Memorandum filing deadline. *See* L.R. 37-2.3. Nonetheless, Plaintiffs' requested relief is still warranted and should be ordered.

As explained in detail below, notwithstanding WSC's recent, untimely production, Plaintiffs' requested relief is still necessary and appropriate. Accordingly, Plaintiffs' motion to compel should be granted.

## A.   An Order Compelling WSC To Produce The Responsive Materials Is Still Necessary And Appropriate

To date, WSC has employed a so-called "rolling production" and produced documents to Plaintiffs in six separate batches. The most recent batch provided by WSC was received by Plaintiffs on May 9, 2016. Although WSC's total production consists of over 58,000 pages of material – inclusive of significant duplication – this figure is far less than the 150,000 pages of material that WSC's counsel originally represented would be produced by WSC in the case. (Feasby Decl., ¶ 5.) Moreover, WSC has not represented that this "sixth round of production" constitutes its final production. Without such a representation, the completeness and finality of WSC's production is unknown to Plaintiffs. Because the status of WSC's production is unclear, a Court order directing WSC to produce all remaining responsive materials in its possession, custody or control by a specified deadline is needed.

Likewise, the completeness of WSC's interrogatory responses is also in question. As reflected in Plaintiffs' portion of the Joint Stipulation, WSC responded to a large volume of the interrogatories by simply stating that it will "produce documents reflecting this information." [*See* D.E. 42, Joint Stipulation, pp. 45-49.] However, consistent with Fed. R. Civ. Pro. 33(d), to respond to interrogatories through reference to documents, WSC must "specify where in the records the answers [can] be found." *Rainbow Pioneer # 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983); *see also Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D.Cal.1996) (specification of records must be in sufficient detail to allow party to locate and identify documents from

2

which the interrogatory answer may be ascertained, as readily as the party served). When confronted with the above authority, WSC agreed to supplement those interrogatories at issue, and has recently done so by identifying the Bates number(s) of the related document(s).

In light of its recent supplemental responses, WSC's interrogatory responses appear to be complete. However, in the event that additional documents are produced, those additional documents may require WSC to amend its responses to Interrogatory Request No. 3 – which cites to the Bates numbers of documents in WSC's production. Thus, to the extent WSC's document production is not complete, its interrogatory response may also require further supplementation. Again, a Court order directing WSC to provide all supplemental interrogatory responses by a specified deadline is needed.

**B.**     **WSC Should Be Ordered To Provide Declaration Testimony Describing How The Responsive Materials Were Collected And Produced**

As set forth in Plaintiffs' portion of the Joint Stipulation, WSC had failed to produce all responsive documents from a number of custodians. *See* Mulcahy Decl., ¶ 3. "When the response is minimal and clearly omits materials from readily identifiable repositories likely to include some or all of the requested materials or information, the obvious conclusion is that the responding party has neither conducted a reasonable inquiry nor produced all documents within its possession, custody or control." *Meeks v. Parsons*, 2009 U.S. Dist. LEXIS 90283 (E.D. Cal. Sept. 18, 2009). WSC's production shortcomings and extended delays reveal that it has not conducted a proper and diligent inquiry to locate responsive documents.

In order for Plaintiffs to quickly get to the bottom of WSC's production deficiencies, Plaintiffs ask the Court to order WSC to provide declarations or affidavits detailing the nature of its "reasonable inquiry" to locate responsive documents on a request-by-request basis. *See A. Farber & Ptners., Inc. v. Garber*, 234 F.R.D. 186, 190 (C.D. Cal. 2006); *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) ("A party must make a reasonable inquiry to determine whether responsive documents exist, and if

they do not, the party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.")

At this point, WSC has produced a declaration from Paul Drayna, its General Counsel, acknowledging receipt of Plaintiffs' discovery requests in December 2015, and engaging a meeting with litigation counsel in January 2016. (Drayna Decl., ¶¶ 3-4.) However, following the January meeting with counsel, Mr. Drayna fails to identify any additional dates in which he or WSC engaged in any efforts to locate and produce the responsive materials. This naturally calls into question the nature of WSC's "reasonable inquiry" to locate the responsive materials.

Because of this, WSC should be ordered to provide a verified declaration or affidavit that: (1) details the extent of its efforts to comply with Plaintiffs' discovery requests, (2) acknowledges WSC's full compliance with its discovery obligations, and (3) represents that production is complete.

Further, WSC's counsel represented in his filing with the Court that "a matrix of the document requests at issue" has been created to verify that WSC has complied with many of the discovery obligations in the case. (Feasby Decl., ¶¶10-11.) Plaintiffs request that WSC be ordered to produce this matrix to help expedite the extensive discovery delay already caused by WSC and allow Plaintiffs the ability to confirm WSC's representations regarding its production.

## C. <u>WSC Should Be Ordered To Pay Plaintiffs' Reasonable Attorneys' Fees And Costs In Bringing The Motion To Compel</u>

As explained in the Declaration of Kevin Adams filed in support of Plaintiffs' motion to compel, this is not the first time that Plaintiffs have been forced to expend significant attorneys' fees in preparing a motion to compel discovery in order to gain Defendants' cooperation. (D.E. 42-2,Adams Decl., ¶ 16.) In late February 2016, after meeting and conferring with WSC regarding the inadequacies in its written discovery responses, Plaintiffs prepared a motion to compel and began the joint stipulation and filing process set forth in L.R. 37-2. After drafting its portion of the joint stipulation and

supporting documents, WSC capitulated to Plaintiffs' requests and agreed to supplement its responses. Because WSC ultimately supplemented its responses, Plaintiffs did not pursue their first motion to compel and did not seek (or obtain) the recovery of attorneys' fees from WSC in connection with the preparation of the moving papers.

Plaintiffs again find themselves having to incur substantial attorneys' fees in forcing WSC to comply with its discovery obligations. An award of reasonable attorneys' fees and costs should be awarded under these circumstances. *See Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D 543, 558 (N.D. Cal. 1987) (the responding party's "failure to produce clearly responsive documents and information" among other items, made fees and costs recoverable); *see also Advanced Visual Image Design*, 2015 U.S. Dist. LEXIS at *23 (awarding fees due, in part, to the responding party's "unjustified delay in producing documents").

Accordingly, Plaintiffs respectfully request that they be awarded fees and costs in bringing the instant motion to compel.[2]

Dated: March 4, 2016          **MULCAHY LLP**

By:      /s/ Kevin A. Adams
         James M. Mulcahy
         Kevin A. Adams
         *Attorneys for Plaintiffs/Counter-Defendants*
         *Bennion & Deville Fine Homes, Inc.,*
         *Bennion & Deville Fine Homes SoCal, Inc.,*
         *Windermere Services Southern California, Inc.,*
         *and Counter-Defendants Robert L. Bennion and*
         *Joseph R. Deville*

---

[2] Upon the issuance of a preliminary award by the Court granting Plaintiffs' their fees and costs, Plaintiffs will provide the Court with the necessary declaration and supporting documents setting forth those fees and costs incurred by Plaintiffs in bringing this motion.

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address 4 Park Plaza, Suite 1230, Irvine, CA  92614.

On May 23, 2016, I served document(s) described as **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES [L.R. 37-2.3]** on the following person at the addresses and/or facsimile number below:

> Pérez Wilson Vaughn & Feasby
> John Vaughn
> 750 B. Street, 33rd Floor
> San Diego, CA  92101
> vaughn@perezwilson.com

[  ]   VIA FACSIMILE – Based on an agreement by the parties to accept service by fax transmission, I faxed the documents from a fax machine in Irvine, California, with the number 949-252-0090, to the parties and/or attorney for the parties at the facsimile transmission number(s) shown herein.  The facsimile transmission was reported as complete without error by a transmission report, issued by the facsimile transmission upon which the transmission was made, a copy of which is attached hereto.

[ X ]   BY ELECTRONIC SERVICE – Based on a court order or agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed herein on the above referenced date.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[  ]   BY MAIL - I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day, with postage thereon fully prepaid, at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[  ]   BY CERTIFIED MAIL - I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day, with postage thereon fully prepaid, at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[  ]   BY FEDERAL EXPRESS – I am readily familiar with the firm's practice of collection and processing correspondence for Federal Express.  Under that practice it would be deposited

1    with Federal Express on that same day in the ordinary course of business for overnight
     delivery with delivery costs thereon fully prepaid by sender, at Irvine, California.

2

3    [  ]   BY MESSENGER SERVICE – I served the documents by placing them in an envelope or
     package addressed to the persons at the addresses listed herein and providing them to a
     professional messenger service for service.  A declaration by the messenger service will be
4    filed separately.

5

6           I declare under penalty of perjury under the laws of the State of California and the United
     States of America that the above is true and correct.

7

8           Executed on **May 23, 2016** at Irvine, California.

9

10                                                          By:   /s/ Barbara Calvert
                                                                  Barbara Calvert
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE